v. John Playforth of Covington-Burling, for a petition to Tina Clarke. I'd ask to reserve four minutes of time. Tina Clarke is currently serving life in prison without the possibility of parole on the basis of a constitutionally infirmed conviction and sentence. This court granted a certificate of appealability as to 12 of the issues that Ms. Clarke raised in her pro se habeas petition. In subject to the court's questions, I'd like to focus first on the violation of Ms. Clarke's Sixth Amendment right to a jury determination of her guilt as to every element of the crimes with which she was charged. Ms. Clarke's intent was the central issue litigated at her jury trial. Her core defense to the armed robbery charge was that she never intended to rob the victims in this case, John and Kim Crider, and that she abandoned the intent to rob anyone when Randy Crider, the man who purportedly had a wad of cash... That's subject to harmless error, isn't it? Yes. Okay. And if you look at her intent at the time they were going to the house, isn't that problematic? I thought that was the whole point, to rob the cash. Yes. There was an intent to rob, but not of the victims in this case as required by the armed robbery statute. Ms. Clarke's testimony was that she had planned to go to the house to rob the wad of cash, which was possessed by Randy Crider, but because Randy Crider was not at the house and no one, including the purported principal in the case, Patricia Plummer... The missing element was the intent to permanently deprive. Was the intent to permanently deprive the victims of money or property. In this case, the victims are John and Kim Crider. So even if there was a time at which Ms. Clarke had the intent to rob Randy Crider, a non-victim, that would not There was a change in execution of the plan. The plan was to rob Randy, but instead Plummer... Your theory is that it was Plummer who took the wallet, and Plummer took the wallet and tried to rob Kim and John. Yes. And that there wasn't enough evidence to show that your client Clarke agreed with this change in plan. Correct. And in particular, not only didn't agree to amend the plan, but also affirmatively renounced any plan to engage in robbery once it was clear that Randy Crider, the man who reportedly had the wad of cash, wasn't present at the residence. Detective Elford, who testified about Ms. Clarke's custodial statement, testified that Ms. Clarke said, forget it, I don't want to have any part of this once it was clear that Randy Crider wasn't present. Did she go, did your client leave? Or did she stay there and watch, on the best case scenario for your client, that she stayed and watched Plummer take the wallet or money from one or the other of these two victims and then shoot and kill the two victims? I don't think the record answers that question. I think the jury could have determined, for instance, that Ms. Clarke had abandoned this intent, that Ms. Plummer basically surprised her by going out, shooting the victims, taking the wallet, and at that point, both women fled the scene. The problem with your argument is that while your client said some things, she also said some other things, and then there's proof that she did some other things, and so whatever happened in the bathroom, there's evidence in the record that she then went ahead with the execution of the plan. She didn't stay in the bathroom. She didn't turn around and leave the house. So, I mean, there's a lot of proof that she was still a willing participant. There is evidence that would go both ways in this case, and I think what the core of the argument is that because the jury was never allowed an opportunity to decide that core issue, she presented evidence that, in fact, she'd renounced the plan, that Ms. Plummer had gone on to commit the plan alone, without her involvement at all, and that for that reason... Part of assessing the harmlessness argument is, you know, do actions speak louder than words? And, you know, in this context, you have to evaluate the strength of the prosecution's case on this point, correct? Absolutely. The strength of the prosecution's case matters, but I think what the cases that evaluate harmlessness in the specific context of a failure to instruct the jury on an element of offense hold, and that's Nader, as well as this court's decision in Patterson v. Haskins, 316 F3rd 596. That's a habeas case regarding a failure to instruct and applying harmless error in that context. Those cases hold that where the defendant seriously contests the element that's not instructed and has some evidence, not overwhelming evidence, but has some evidence in their favor, that that error is not harmless. So circumstantial evidence is allowed, and this intent to permanently deprive element I don't think is a very heavy one, but, I mean, as I understand your argument, if you have an agreement to go rob a 7-Eleven, you show up and the doors are locked, lights are out, no one's there, and so that was the original plan, but then you go two blocks and you now rob the other 7-Eleven, but this time you decide, well, I'm not comfortable with the gun, you give the gun to the other person, but then you don't leave. Surely the evidence that you wanted to rob the first place and you went to the 7-Eleven to rob that very place is circumstantial evidence that you were interested in robbing the second place, even though it had a different person there, it was a different location. That just is a no-brainer. There is some evidence. But if you leave, that's another story. If you say, I'm out of here, then all bets are off. But I don't understand, that didn't happen here. It just doesn't even seem close. So I guess the standard here isn't that there's no evidence on the prosecution's side. The standard is because the jury wasn't allowed to make a determination of this element, that it's not harmless unless Ms. Clark didn't contest the element, and the evidence would strike that overwhelming. This was something counsel didn't ask for, and the judge said, I'm not going to let you instruct. We're in a world where, first of all, these are state law instructions. It's federal habeas. It's some form of plein air review. There's an awful lot of filters here, or hills to climb is probably a different way to put it. Well, under the harmlessness review here is under Brecht, and under the Supreme Court's decision in Frey v. Plyler, this court determines harmlessness de novo, which is to say not according to deference either to the district court or the state courts. And the harmlessness standard from the particular context of failures to instruct is Well, we are allowed to pay attention to the underlying claim of federal error. The underlying claim of federal error is a bad jury instruction under state law, right? And that is a very difficult claim. In general, that is a very difficult claim, particularly where the question is has the state Undesirable, erroneous, or universally condemned instructions won't cut it. Seek up U.S. Supreme Court. In the context where the jury instructions seem incomplete or where they don't articulate the standards for reasonable doubt and the best possible way and those sorts of things, I think that's exactly the right standard. But here where it's uncontested that this is an element of the armed robbery charge and where the trial court failed to instruct the jury on that element, there are cases that specifically concern that context, the Nader case, the Patterson case I just mentioned. And what those cases hold is that where there's a failure to instruct on a specific instruction that's necessary for the verdict, that that error is harmless only where the element is uncontested and where the evidence with respect to that element is overwhelming. And it's the state's burden to show both of those pieces. And that's not a showing the state can make here exactly because Ms. Clark contested that element throughout her trial. What about the fact that it's not, there's no evidence suggesting that she did not continue to be on the scene and participate to some degree after the bathroom conversation, correct? I think there's not a lot of evidence about exactly how the timeline played out at that point. Well, let's say there's no real evidence. Arguably, she was not the person who pulled the trigger. She was not the person who took the wallet. But she was there. She was a participant, correct? She was there, but she would contest exactly the second point, that she participated in any way in the armed robbery. And she would contest that by her testimony that she decided not to go through with it? Yes, ma'am. Would she contest it by any of her actions subsequent to leaving the bathroom? Well, the one action I guess that's relevant after that is the removal of the wallet from the victim. And the state court's finding was that that was done by the co-defendant, not by Ms. Clark. Well, the shootings were after they left the bathroom. The shootings were also after they left the bathroom. Again, the state court's finding was that that was the co-defendant, Bishop Palmer. Well, the point is, if she continued to participate and the jury made that finding, she could have been convicted as an aider and abetter, correct? She could have been convicted. And this is not a sufficiency of the evidence challenge. Oh, I understand that. But it goes overall to the weight of the evidence against her and whether it matters so much exactly what her intent was with respect to permanent deprivation of the money if she had the intent to participate and further the crime. That's absolutely right. Again, the specific scenario here is that because there's a failure to instruct the jury, the standard isn't what the weight of the evidence is. And it's piling it on the aiding and abetting on the inadequate instruction to begin with. Absolutely. And the inadequate instruction goes to the aiding and abetting because both potential mens rea for aiding and abetting require one form or another of that instruction. You either have to also have the intent when you aid the principal or you have to know that the principal has that intent when you provide the aid. Thank you. Good morning, Your Honors. Gaten Javila-Rayash on behalf of Ms. Warren. May it please the Court. The Court's only role in this case is to correct any extreme malfunctions in the state proceedings below. And there are none here.  And I will start with the state proceedings. I will start with the intent issue that has just been discussed. As Judge Sutton aptly pointed out, the only potentially imperfect part of this instruction is that it didn't say anything about the intent to permanently deprive. It did, however, talk about going after property and moving it. And I would submit that it... Explain that. Say what the instruction said that was about the concept of robbery but didn't have this permanently deprive element. Well, I'll go right to it, if I may. The instruction that was given was this. They must show that the defendant assaulted Kim Crider. Number two, at the time of the assault, that she was armed with a weapon designed to be dangerous and capable of causing death or serious injury. Third, at the time of the assault, the defendant took money that did not belong to her. Fourth, that this money was taken from the person of Kim Crider or in his presence. And fifth, that the money was moved. So clearly the instructions here, and this I'm reading from the transcript, the instructions here are specifically talking about going after money, taking it, moving it. To say that the jury... It's basically whether it's borrowing or not. Exactly. That's what that instruction suggests. So their theory of the case is they did all of this and then are going to do a no-interest loan. Right. That's what the jury would have to be able to conclude after finding on all these other elements that, oh, they were just borrowing. Well, was there any evidence that there was not an intent to permanently deprive these? Does it have to be these victims, these two individuals? I don't believe it has to focus on the victims. What would you use to support your belief? To be honest, I don't have specific support for that other than I'm not aware of a case that says that you have to focus on the specific victim. By the record, however, the testimony of Detective Alford shows that she admitted there was an intent to go commit a robbery, not specifically that they were going to take the money right out of Randy Crider's hands, but just that they had an intent to go commit a robbery. And was that introduced into evidence, that statement? Detective Alford's testimony, yes. He was recounting the confession that he received from Ms. Clark, and that was in evidence. You know, intent instructions generally are, just as a general matter and also with respect to this, are a very critical part of instructing the jury about any criminal offense, correct? Yes, I concede that. It's not just some little frill? No. How did this happen? How was this mistake made? What happened? Is there some pattern of jury instruction that omitted it? I'm just surprised. This is arguably the least important part of the instruction, and what happened to it? Good question. I honestly don't know, Your Honor. I don't know why the last element of this was omitted. Perhaps it was on the next page, and the judge didn't see it. You just have to wonder how these things do happen, though. I mean, it's obvious that any judicial officer can inadvertently neglect to read or include a particular part of an instruction. I'm cutting the slack, I suppose, to the judicial officer in this scenario, but you've got two lawyers who are sitting there listening theoretically. And no one said anything. The defense counsel didn't object to it, probably because so much of the instruction had been given. And then apparently the Michigan Court of Appeals couldn't accurately discern whether it was there or not either. You know, I think that they looked at it from the 50,000-foot view and said, you know, this is close enough to the law. In fact, the jury instructions until March of next year are not mandatory. The court doesn't have to use those. It can come up with its own criminal jury instructions. What about the Godden case? I'm not sure I understand the court's question. Well, your opponent argues that Godden is a key case, and I wasn't sure that your brief addressed that, and I was just curious whether you had any thoughts on it. I'll have to refresh my recollection here about what that was. To focus another way, what standard of review should we be applying to this issue? On the jury instruction issue? Yeah, that's the only issue that your opponent argued in the oral argument. Well, the court reviewed this under the plain error standard. But I don't think that the plain error standard is substantially different. Well, the plain error standard is actually a higher standard, or an easier-to-meet standard than the standard that this court would be applying on habeas review. This court would be looking to see whether the jury instructions were so infirm that it rendered the entire trial a violation of due process. The plain error instructions, on the other hand, are looking at whether there was an error that was plain and whether that error infected the process with such unfairness that due process was denied. There's not a lot of white space between those two standards. So I think when the court's looking at this, honestly, it should be deferring to what the state court decided, because essentially it applied the correct legal standard. If anything, it applied a standard that was more rigorous than the standard that this court would be applying. And therefore, it should be entitled to epideference under this issue. I thought he said that it's de novo. The harmlessness inquiry is de novo. I don't agree with that. I don't know why it would be de novo in an epic case where the court of appeals looked at the question of whether the jury instructions were proper. I think when you consider the confession in this case and you look at what they're trying to argue was sort of a turning point, and we're talking about the point where they were in the bathroom and she handed Patty Plummer the gun. The only way that was a turning point is if that turned it from committing the armed robbery yourself and the felony murder yourself to aiding and abetting Patty Plummer to commit the armed robbery and the felony murder herself. If that's a turning point, that's the only thing it did. Now, I think it was fair for the prosecution to believe that Ms. Clark and to argue that Ms. Clark was, in fact, not telling the truth there, that she was, in fact, the one who carried through with it. But at the end of the day, it's really immaterial because whether she carried through with it or she handed Patty Plummer the gun to carry through with it, she's guilty of the same crime. So maybe this is the question Judge Gibbons was raising, this point about the standard of review. I mean, if the Michigan Court of Appeals mistakenly thought the element was given, which is what it looks like they did, you wouldn't give evidence of deference to that. First, as they point out, that would be a mistake of fact. So maybe they're right that, I mean, it may not be the end of the world for you, but they may be right that it gets de novo review. Well, the Court of Appeals said that the jury instruction was an accurate statement. Look at the Court of Appeals opinion on page 7. It says, The element that defendant had to have intended to permanently deprive the victims of their money was, in fact, related to the jury. So where is that? That seems to be a factual statement. You're right. We don't have that. That wasn't in the record. So the Michigan Court of Appeals is flat out wrong. They're wrong there. In a statement of fact. I will concede that. Okay. So what is our standard of review under those circumstances? Well, it makes it an unreasonable determination of fact. Right. And that just immediately funnels us into the harmlessness analysis, right? Yes. To determine if there's a constitutional violation. Yes. That's fair. It does. If the state court decision was based on an unreasonable determination of fact. And you could describe that as a de novo determination, but what it is is it's an application of the standard the Supreme Court has taught. We're not de novo reviewing anything the state court did at that point. We're making a separate determination as to whether, given the unreasonable determination of fact, the proceedings deprived the defendant of a constitutional right. Correct? Correct. But my recollection is that the court also said, we conclude that while felony murder, oh, no, wait, that's not what I want. The court specifically stated that for the crime of armed robbery it means that she must, it must be proven that she intended to commit armed robbery. Further, the element that defendant had to have intended to permanently deprive the victims of their money was in fact related to the jury. So the court's making two points here. They're not necessarily dependent on each other. So while it may be wrong on the factual question of whether the permanent, intent to permanently deprive issue was related to the jury in those words, it was still related to the jury that she had to intend to commit the armed robbery. And the instruction as a whole indicated that armed robbery includes going for the purposes of taking the money and moving it. And I believe that the court here, what the court here is saying is, this was close enough under our plain error review of this instruction to say this was not a plain error that was being committed. And when you have a plain error review and that's what the court is doing, that's a procedural default. The court's having to look at this from a different standard than what it normally would if they had actually objected to this at trial. I mean, it does say the defendant took money that did not belong to her. I mean, it is odd to say that you're taking it only to give it back later. But it would be awfully nice to mention, clarify the point. It would be. It certainly isn't perfect, as there are imperfections in every trial. And that's all we have here are some imperfections. We don't have an unfair trial. And that's particularly so in light of the overwhelming evidence and the confession in particular. I want to sum up, close by making a final point about the confession. And that is that the double deference owed under Strickland and under Ipa simply cannot be overcome under the facts as they are with this confession. This confession came in, was obtained in an hour and 12 minutes. The defendant even came back after the interview was over and volunteered more information than she had originally. The confession was tape recorded. And the evidence in the record was that she was lucid and there was no communication problem at the time. When you look at that as a whole, it's frankly clear that the prosecutor is right. She's trying to get on Detective Belford's good side. She knew she was in trouble, and this wasn't a matter of her... One question is whether the confession eliminated the need to have an element of the crime instructed to the jury. So did she confess to the intent to permanently deprive the victims of their money? Not in those exact words, but yes. What did she confess to that relates to the intent to permanently deprive the victims of their money? Well, she confessed that the intent from the moment that she went to go get the bullets and they got in the van was to go rob, to go take the money. To go rob whom? To go to the Crider residence and commit a robbery. Of whoever happens to be there? Of whomever happens to be there? It didn't say specifically Randy Crider. It didn't say specifically whom. It meaning the confession? Meaning the confession. Ms. Clark, according to the testimony of Detective Belford, because of course she wasn't on the witness stand, she didn't specifically say who in particular. She knew the money was there because she had seen Randy Crider with it. She believed it was there at least. Randy had the money at that point in time when she saw Randy with the money, but she doesn't know whether the money is with Randy, wherever Randy may be, or there, wherever she saw it at that time. And she also knows that Patty Plummer intends to commit a robbery. I mean, this is a critical part of this case. She has someone else with her. So would it be enough if Plummer intended to permanently deprive the victims of their money? Absolutely. Because even if at the time she got there she changed her mind and didn't want to do it herself. I wonder if there's a quicker way to think through this debate that was occupying us in the first half of the argument and now is occupying us here. You have to take the instructions that were given, and we have a jury verdict on this. Part of the instructions, it must be shown that the money was taken from the person of Kim Crider. It has the proof that you used armed robbery to take money that did not belong to her. All of those elements were met. There's nothing to debate on those fronts. That's been decided. The only question is whether you have to start again because the jury wasn't asked specifically whether they were taking the money permanently. And, I mean, I guess there's not a lot of armed robbery cases out there where anyone won on that element, that I had the gun, I threatened, I got the money, but this was just for a little bit. Then we were going to give it back. Ask yourself why you need a weapon for that purpose. The jury convicted on those elements. But that's really a question for your friend on the other side. Thank you. Thank you. Thank you. So why? We have instructions on these other things. So that just takes all that stuff off the table as to who was there, whether it was the person they expected to rob, somebody else. That's off the table. Now we're just talking about an armed, threatened loan. You're allowed to use common sense. That's not the focus of the argument. So one of the ways the jury could have convicted Ms. Plummer, I mean Ms. Clark, would be to say, we know that Ms. Plummer committed this robbery as a principle. And that gives you all the elements that you talked about, about threatening and taking money and using a gun and so forth. And also doing it permanently. And doing it permanently. End of story. But the question in that context would be, did Ms. Clark have the intent at the time in which she provided aid to Ms. Plummer either to deprive not just someone but the victims of money or property? Or did she know that Ms. Plummer had the intent, again, to deprive these victims of money or property? Yes, yes, yes, yes. Based on the verdict. Well, the verdict's not clear as to that point exactly because the jury wasn't instructed it needed to find that. So as one. It wasn't just instructed about the permanently depriving. It's instructed the taking at the threat of a weapon. It wasn't instructed that the purported aider and abetter had to have the intent to deprive specifically the victims of money and property. One potential factual scenario that the jury might have found plausible was that Ms. Clark knew that Ms. Plummer was intending to rob Randy Crider and gave her a gun. That would constitute. I may be losing track of your arguments. Are you focused on the permanent deprivation argument? Are you shifting to a different argument? I'm focusing on the permanent deprivation from the victims, specifically the victims John and Kim Crider. And so if Ms. Clark's intent only related to Randy Crider and the jury was never instructed that the intent had to be specific to the victims in this case, John and Kim Crider, and that's effectively one of the defenses that she focuses on at trial. But the instruction does say Kim Crider. Well, the instruction says that someone did rob Kim Crider, and that evidence could have been found by the jury based on the evidence that Ms. Plummer, after whatever aiding and abetting took place, at which point you would make the determination of Ms. Clark's culpability, that Ms. Plummer went on to rob those two victims. That part's effectively undisputed. So you're saying that if you have two people who go in with a plan to rob A, but when they go in they find that B is there, and one person has the gun and points the gun at B and says, give me your money, and takes the money, and the two run out, that A would not be able to be convicted, that your client would not be able to be convicted absent of showing that she transferred her intent to rob B? Yeah, so one way or another, and it could be done by the jury. Let him answer. The jury got that just question. The jury got that exact question. I answered it against you. I don't think that was the question that was asked to the jury. So the jury could have found, for instance, that before they go into the house, Ms. Clark gave Ms. Plummer the gun. At that time, Ms. Clark might have had the intent to rob someone or might at that point have known that Ms. Plummer had the intent to rob specifically Randy Kreider. They go into the house. Ms. Plummer, after determining that the target of the robbery was not present, shifts her intent, robs other people. The aiding and abetting statute requires that at the time any aid is given, the aider and abetter have at a minimum knowledge that the principal has the intent to rob, again, the victims of money or property. That's the precise element that Ms. Clark was contesting at trial. It's where she had evidence, through the form of her custodial statement, against that piece. There is evidence. Detective Elford's testimony tries to shore up that hole in the case by trying to be specific about what Ms. Clark's knowledge was at the time that the gun was transferred. But that testimony necessarily was Detective Elford's interpretation and analysis of Ms. Clark's testimony. Could I try this a different way? I want to make sure I didn't – let me just – or did you have another question? No, you go on and I'll finish. I just want to maybe try to isolate this. I can imagine a state saying this sixth element is ridiculous. We don't need this. So just suspend, just assume for the sake of argument, all that matters in armed robbery is the taking. We're not worried about whether you want to give it back. That doesn't happen very often, so we're just not worried about that. So you have everything else now in this case is the same, except Michigan doesn't have that sixth element. And you're right. The main theory of the case for the prosecution was not that your client was the one that was going to do all this stuff because she handed the gun over, and so it's aiding and abetting. I assume given the instructions on page 18 of your brief, combined with the aiding and abetting instruction, there's nothing to talk about in terms of there being sufficient evidence to convict your client on aiding and abetting in this case. Sufficient evidence is not the sort of standard that we're contesting. Yes, because there's enough evidence to show that even though the victim changed, the potential victim changed, that there was still enough intent to commit armed robbery under my version of the Michigan statute. I mean, that's just not really a close case. I'll accept that hypothetical to go forward. Okay, so now what I'm saying is all of your arguments about transferring intent, where they're most important is at the armed robbery and the taking. That's where they really matter. They're not about this last thing of whether you did all this but didn't plan to keep it forever. So that's what I'm struggling with with your argument. Well, I think where the intent matters is at the point at which whatever aid was given. It's not clear when that happened. Detective Elford testified that Ms. Clark's custodial statement was unclear as to when the gun was transferred. That's the purported aid that would satisfy the aiding and abetting standard. And so the question that the jury had to answer was what was Ms. Clark's intent or what was her knowledge at the point in which whatever aid to Ms. Plummer was given? Imagine the transfer of the gun would be one theory that the jury could have settled upon. And if at that time her intent was only to rob Randy Crider, not to rob the victims in this case as required by the jury instruction, then the jury could well have acquitted her once having understood that that's what the requirement was. And that's effectively her core defense at trial, and she didn't receive a jury verdict on that defense because the instruction as to what it meant to intend to commit armed robbery wasn't provided. And that instruction is incorporated into the aiding and abetting. That instruction being permanent deprivation. Permanent deprivation from the victims of money or property. Thank you very much. And I understand that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client and interests of justice. Thank you very much. The case will be submitted with the pert call.